Dale ANDERSON, Plaintiff,

v.

NEWMAR CORPORATION, an Indiana corporation; Freightliner Custom Chassis Corporation, a Delaware corporation; and Thermo Leasing Corporation, a Minnesota corporation, d/b/a Shorewood RV Center; Defendants.

No. CIV. 03–3480PAM/RLE.

United States District Court,
D. Minnesota.

May 20, 2004.

Todd E. Gadtke, Hauer Fargione Love Landy & McEllistrem, Minneapolis, MN, for Plaintiff.

Kristine T. Donatelle, John D. Sear, Bowman & Brooke, Mickey W. Greene, Hanson Marek Bolkcom & Greene, Tamar N. Gronvall, Rita A. O'Keeffe, Blake Shepard, Jr., Leonard Street and Deinard, Minneapolis, MN, Glenn L. Duncan, Thorne Grodnik LLP, Elkhart, IN, for Defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court on Motions for Summary Judgment filed by Defendants Newmar Corporation ("Newmar") and Thermo Leasing Corporation d/b/a Shorewood RV Center ("Shore-

wood"). For the following reasons, the Motions are granted.

## BACKGROUND

Plaintiff Dale Anderson purchased a motor home from Shorewood in April 2001. In October 2003, he surrendered the motor home to Shorewood, contending that it was defective within the meaning of the Minnesota lemon law and demanding a refund of his purchase price. Newmar manufactured the living quarters portion of the motor home. Defendant Freightliner Custom Chassis Corporation ("Freightliner") manufactured the motor home's chassis.

Anderson is not your typical motor home purchaser. He has served as an expert witness on motor homes in at least six cases, and in fact served as an expert witness in a Minnesota state-court case against Newmar. Moreover, he has on no fewer than four other occasions contended that a motor home that he purchased was a lemon. He received refunds or replacement vehicles in those situations. Anderson runs a website called myrvsux. com.

In this lawsuit, Anderson raises claims under the Minnesota lemon law, Minn. Stat. § 325F.665, the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and common-law claims for breach of contract and breach of warranty. Newmar seeks summary judgment on Anderson's claims under the lemon law, the Magnuson–Moss Warranty Act, and asks the Court to dismiss Anderson's claimed loss-of-use damages. Freightliner joins in Newmar's Motion as to the loss-of-use damages. Shorewood's Motion for Summary Judgment seeks dismissal of Anderson's claims under the Magnuson–Moss Warranty Act, and also seeks dismissal of Newmar's cross-claim against Shorewood for contribution.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank,* 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik v. Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995).

### B. Lemon Law Claims

Newmar argues that the lemon law does not apply to Newmar, and that in any event Plaintiff's claims regarding alleged defects in his motor home are not covered by the lemon law.

Minnesota's lemon law provides, in relevant part:

If a new motor vehicle does not conform to all applicable express warran-

ties, and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer ..., the manufacturer, its agent, or its authorized dealer shall make the repairs necessary to conform the vehicle to the applicable express warranties ....

If the manufacturer, its agents, or its authorized dealers are unable to conform the new motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use or market value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall either replace the new motor vehicle with a comparable motor vehicle or accept return of the vehicle from the consumer and refund to the consumer the full purchase price ....

Minn.Stat. § 325F.665, subd. 2–3. The law defines "motor vehicle" as: "(1) a passenger automobile ... including pickup trucks and vans, and (2) the self-propelled motor vehicle chassis or van portion of recreational equipment as defined in section 168.011, subdivision 25 ...." *Id.*, subd. 1(e). "Recreational equipment" is defined as "travel trailers, including those which telescope or fold down, chassis mounted campers, house cars, motor homes, tent trailers, slip in campers, and converted buses that provide temporary human living quarters." *Id.* § 168.011, subd. 25.

■ The terms of the lemon law limit its application to motor homes. The only portion of a motor home covered by the lemon law is the "self-propelled motor vehicle chassis or van portion." Moreover, the lemon law applies only to manufactur-

ers, assemblers, and distributors of "motor vehicles." *Id.* § 325F.665, subd. 1(b). With respect to motor homes, the only entities that can be liable under the lemon law are the manufacturer, assembler, or distributor of the chassis or van portion.

■ At the hearing on the Motions, Anderson for the first time contended that Newmar is an assembler or distributor of the chassis or van portion of the motor home, and thus that Newmar can be liable under the lemon law for the alleged defects in the chassis or van portion of Anderson's motor home. As Newmar points out, however, Newmar's role in the motor home manufacturing process has been specifically defined by the legislature. Newmar is a company that "performs manufacturing operations on an incomplete motor vehicle or a van-type motor vehicle so that it becomes a type A, B, or C motor home," and thus Newmar is a "final stage manufacturer." *Id.* § 168.011, subd. 32. Had the legislature intended final stage manufacturers such as Newmar to be liable for alleged lemon law violations, the legislature would have included the term "final stage manufacturer" in the lemon law. Instead, the language of the lemon law makes clear that, when a motor home is involved, the only entity that can be liable for defects is the manufacturer, assembler, or distributor of the "self-propelled motor vehicle chassis or van portion" of the motor home. This definition excludes the final stage manufacturer from lemon law claims involving motor homes.[1]

■ Anderson's claims regarding defects in the living quarters portion of his motor home are clearly not covered by the lemon law. In addition, Anderson cannot

---

1. Contrary to Anderson's argument, this interpretation will not exclude from liability corporations such as Toyota Motor Sales. The lemon law applies to all manufacturers, assemblers, or distributors of any portion of passenger automobiles. Minn.Stat. § 325F.665, subd. 1(b), (e). The legislature narrowed lemon law liability only for recreational vehicles such as motor homes.

raise lemon law claims against Newmar, because it is undisputed that Newmar is not a manufacturer, assembler, or distributor of the "self-propelled motor vehicle chassis or van portion" of Anderson's motor home, nor is Newmar an agent of the manufacturer or an authorized dealer of the manufacturer. Anderson urges the Court to read the statute broadly to give effect to the liberal remedial purpose behind the statute. Although the purpose of the statute may be liberal, the language of the statute with regard to motor homes is restrictive, and the Court is not free to disregard the letter of the law to give effect to the ostensible spirit of that law. *Turner v. Mut. Serv. Cas. Ins. Co.,* 675 N.W.2d 622, 625 (Minn.2004) (citing Minn. Stat. § 645.16). The language of the lemon law could not be more clear. When a new motor home is involved, the only lemon law claims that may be raised are claims regarding the chassis or van portion, and those claims may be raised only against the manufacturer of the chassis or van portion, or that manufacturer's agent or authorized dealer.

## C. Magnuson–Moss Warranty Act

The Magnuson–Moss Warranty Act provides that written warranties regarding consumer products shall be "fully and conspicuously disclose[d] in simple and readily understood language" to the consumer. 15 U.S.C. § 2302(a). The Act prescribes a form for written warranties, *see, e.g., id.* § 2303(a), and provides federal minimum standards for warranties, *id.* § 2304. The Act also allows a consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Act], or under a written warranty, implied warranty, or

service contract" to bring a civil action. *Id.* § 2310(d)(1).

### 1. *Claims Against Shorewood*

Shorewood's Motion for Summary Judgment claims that it cannot be liable under the Magnuson–Moss Warranty Act because it did not issue any written warranties to Anderson. In response, Anderson contends that the Court should deem the Newmar Warranty Registration form to be a written warranty provided to Anderson by Shorewood for the purposes of the Act. Anderson has now abandoned his claim that Shorewood may be liable under the Act for the oral warranties it allegedly provided him.[2] *See McNamara v. Nomeco Bldg. Specialties, Inc.,* 26 F.Supp.2d 1168, 1175 (D.Minn.1998) (Erickson, M.J.).

The only documents Shorewood provided to Anderson were written warranties for Newmar and Freightliner. The purchase agreement Anderson signed expressly disclaimed all warranties. Anderson's only argument opposing Shorewood's Motion is that the Pre–Delivery and Acceptance Declaration should be deemed a warranty as a matter of law. His only support for this proposition is case from New York state court, *Marine Midland Bank, N.A. v. Carroll,* 98 A.D.2d 516, 471 N.Y.S.2d 409 (1984).

In that case, the New York court found that a "Dealer's Pre–Delivery Inspection Requirements" form could constitute a written warranty for the purposes of the Magnuson–Moss Warranty Act. The court noted that the Act defines a written warranty as "any written affirmation of a fact ... made in connection with the sale of a consumer product by a supplier to a buyer ...." *Id.* at 518–19, 471 N.Y.S.2d 409 (quoting 15 U.S.C. § 2301(6)). The court

---

**2.** Although the Complaint raises three claims against Shorewood, Anderson has voluntarily dismissed two of the claims. Thus, the claim under the Magnuson–Moss Warranty Act is Anderson's only claim against Shorewood.

found that the Dealer's Pre–Delivery Inspection Requirements form was a written affirmation made by the supplier, and allowed the consumer to pursue his claims under the Act.

■ The form on which Anderson relies in this case is not, however, a Dealer's Pre–Delivery and Acceptance Declaration. Rather, the form is Newmar's Pre–Delivery and Acceptance Declaration. The document bears a large Newmar logo and lists Newmar's address. (O'Keefe Aff. Ex. I.) Moreover, the document clearly provides that it should be returned to Newmar, not to Shorewood. Although Shorewood was responsible for conducting an inspection of the motor home and marking on the form the items inspected, the form was not prepared by Shorewood nor was it intended to be used in any way by Shorewood. Absent some evidence that Shorewood used this form for warranty service purposes or some other purpose, the Court cannot infer that this warranty was in any way "an affirmation ... made by" Shorewood within the meaning of the Act. Anderson's Magnuson–Moss Warranty Act claim against Shorewood fails as a matter of law.

2. *Claims Against Newmar*

■ According to Newmar, the Magnuson–Moss Warranty Act only allows recovery when a supplier or manufacturer fails to comply with the terms of its written warranties. Because Newmar's written warranty expressly disclaimed any warranty over the chassis of the motor home, and because Anderson's claims under the Act relate only to the chassis, the Act does not allow recovery against Newmar.

Anderson fails to respond to this argument in his opposition brief. Thus, he appears to concede that his Magnuson–Moss Warranty Act claim against Newmar should be dismissed. Even if he did not intend to make such a concession, however, Newmar's argument is correct. The Act enforces written warranties (and implied warranties made in connection with written warranties). Newmar's written warranties in this matter expressly and clearly disclaimed any warranty over the motor home's chassis. There is no allegation that Newmar made any sort of oral or implied warranty. Anderson cannot recover under the Act because Newmar has not breached any warranty.

## D. Consequential Damages

Both Newmar and Freightliner seek to preclude Anderson from receiving consequential damages for the alleged loss of use of his motor home. Freightliner notes that the consequential damages Anderson claims exceed $400,000, which is more than three times the cost of the motor home itself.

Both Newmar's warranty and Freightliner's warranty expressly disclaimed liability for consequential damages, including loss-of-use damages. Anderson urges the Court to find these disclaimers unenforceable for two reasons. First, he contends that the warranties fail of their essential purpose. Second, he contends that as an unsophisticated purchaser, the disclaimer was adhesion in nature. He offers no argument on the first point and cites only one case on the second point.

■ Anderson has presented no evidence that the repair or replacement provisions of the warranties at issue failed of their essential purpose. That phrase is a term of art under the U.C.C., and applies to cancel a limitation-on-liability or similar clause "if circumstances arise to deprive the limiting clause of its meaning or one party of the substantial value of its bargain." *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 356 (Minn.1977) (citing Minn.Stat. § 336.2–719; U.C.C. Comment 1). There is simply no evidence that the repair or replacement provisions in the

warranties for Anderson's motor home failed of their essential purpose and thus no reason to invalidate the accompanying limitations on consequential damages. Thus, the Court will not invalidate the limitation on consequential damages clause in those warranties.

■■■■ Anderson's contention that he is an unsophisticated purchaser is disingenuous. He has purchased no fewer than five motor homes and describes himself as an expert in motor homes. Although the transaction at issue might not fairly be characterized as a transaction between commercial entities, Anderson is certainly not the typical unsophisticated purchaser of motor homes. Under Minnesota law, the limitation on consequential damages is enforceable unless it is unconscionable. *Int'l Fin. Services, Inc. v. Franz*, 534 N.W.2d 261, 269 (Minn.1995). There is no evidence in this case of unequal bargaining power, or any other circumstance that would lead the Court to conclude that the consequential damages limitations were unconscionable. Thus, those provisions are enforceable, and Anderson may not seek damages for the loss of use of his motor home, or for other consequential damages.

### E. Cross–Claims

Shorewood seeks summary judgment on its cross-claim for indemnity against Newmar and on Newmar's cross-claim for contribution against Shorewood. Shorewood claims that Newmar is obligated to indemnify Shorewood pursuant to the Minnesota Dealer Franchise Statute, Minn.Stat. § 80E.05. Newmar contends that, to the extent that Anderson's claims arise out of independent conduct by Shorewood, Newmar is entitled to contribution from Shorewood.

As discussed above, all of Anderson's claims against both Newmar and Shorewood have been either voluntarily dismissed or have been dismissed by the Court as a matter of law. Thus, the Minnesota Dealer Franchise Statute indemnification provision does not apply, because there has been no judgment for damages. Minn.Stat. § 80E.05 (providing that manufacturer must indemnify franchisee "against any judgment for damages"). Moreover, there is no right of contribution, because Newmar has not been found liable for more than its fair share of damages. *Blomgren v. Marshall Mgmt. Servs., Inc.*, 483 N.W.2d 504, 506 (Minn.Ct.App.1992). Thus, both cross-claims must be dismissed.

### CONCLUSION

Anderson has failed to make out claims against Newmar and Shorewood under either Minnesota's lemon law or the federal Magnuson–Moss Warranty Act. The only claims that remain for resolution are Anderson's claims against Freightliner. Those claims, however, are circumscribed by the consequential damages limitations in the applicable warranties. Thus, Anderson may not seek damages for the alleged loss of use of his motor home.

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Newmar Corporation's Motion for Summary Judgment (Clerk Doc. No. 31) is **GRANTED**; and

2. Defendant Thermo Leasing Corporation d/b/a Shorewood RV Center's Motion for Summary Judgment (Clerk Doc. No. 32) is **GRANTED**.